**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PAUL A. FIORAVANTI, JR.
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: April 23, 2024
Date Decided: May 15, 2024

Joseph L. Christensen, Esquire
Christensen & Dougherty LLP
1201 North Market Street, Suite 1404
Wilmington, DE 19801

Peter J. Walsh, Jr., Esquire
Michael A. Pittenger, Esquire
Justin T. Hymes, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street, 6th Floor
Wilmington, DE 19801

Francine McKenna
TheDig@Substack.com
Philadelphia, PA 19102

RE:  *The City of Omaha Police and Firefighters Retirement System v.*
     *Francis deSouza et al.*, C.A. No. 2024-0172-PAF

Dear Counsel and Ms. McKenna:

This letter addresses the motion of Nominal Defendant Illumina, Inc. (the "Company") for continued confidential treatment of the Complaint filed in this action.[1] Plaintiff filed this action on February 26, 2024, asserting a claim for breach of fiduciary duty against the Individual Defendants.[2] Specifically, the Plaintiff alleges that members of the Company's Board breached their fiduciary duties by

---

[1] Citations to the docket in this action are in the form of "Dkt. [#]." Capitalized terms not defined herein are given the meaning assigned them in the Complaint, which is found at Dkt. 1, and cited as "Compl." The motion for continued confidential treatment, found at Dkt. 14, is cited as "Motion."

[2] Dkt. 1.

causing the Company to close on its acquisition of GRAIL, Inc. ("GRAIL") in violation of a standstill obligation imposed by the European Union Commission.

Plaintiff's Complaint contains information obtained through a books and records demand pursuant to 8 *Del. C.* § 220.[3]  Plaintiff agreed to treat some of that information as confidential.[4]  Accordingly, Plaintiff filed its Complaint as a confidential filing under Court of Chancery Rule 5.1.[5]  On February 29, 2024, Plaintiff filed a public inspection version of the Complaint (the "Initial Public Version"), pursuant to Court of Chancery Rule 5.1(e).[6]

On April 9, 2024, Francine McKenna (the "Challenger"), a self-described independent journalist from the online newsletter "TheDig," filed a Notice of Challenge under Court of Chancery Rule 5.1(f) (the "Notice").[7]  The Notice complained that the Initial Public Version reflected redactions to 40% of the Complaint, including 20 consecutive fully redacted paragraphs in the first section of its substantive allegations, all but two sentences of the second section, and the majority of the third section.  The Notice observed that "as a result of these nearly

---

[3] Compl. 2.

[4] *Id.* ¶ 138.

[5] Dkt. 1.

[6] Dkt. 2.

[7] Dkt. 12.

complete redactions of the plaintiffs' [sic] substantive allegations in the Complaint, it is extremely difficult to know let alone follow the arguments or assess the merits of the case for the purposes of reporting to the public and serving their interests."[8] The Notice highlighted media interest in the case and sought reduced redactions.

In a tacit acknowledgement that they had overreached with their redactions to the Complaint, on April 16, 2024, the parties filed a new, significantly less redacted public version of the Complaint (the "New Public Version").[9] The New Public Version has confined the redactions to portions of paragraphs 36, 67, 74, and 99.[10] The same day, the Company filed a motion seeking continued confidential treatment of its remaining redactions (the "Motion").[11]

Challenger filed an opposition to the Motion on April 24, 2024 (the "Opposition").[12] The Opposition was filed more than five business days after the

---

[8] Dkt. 12 at 4.

[9] The Company also disclosed that it sent an intermediate version of proposed redactions to the Challenger in conjunction with a request that she withdraw her challenge. Motion ¶ 3. The Challenger refused. *Id.* The Company then further reduced its redactions, resulting in the New Public Version. *Id.* In the Motion, the Company asserts that it understood the Challenger was also objecting to the redactions in the New Public Version. *Id.*

[10] Dkt. 13.

[11] Dkt. 14.

[12] Dkt. 15.

Motion. Therefore, it is untimely. Ct. Ch. R. 5.1(f)(2) ("The person challenging Confidential Treatment shall have five days to file an opposition.").[13] "If an opposition to the motion is not timely filed, then the challenge shall be deemed withdrawn and the Confidential Filing shall continue to receive Confidential Treatment." *Id.*

Although the Opposition was untimely, the court has inherent authority to determine whether and the extent to which information contained in court filings is entitled to confidential treatment. Court of Chancery Rule 5.1(b)(4) provides that "[i]n connection with the entry of an order pursuant to this Rule, the Court may determine the manner and extent of Confidential Treatment for any Document" and "may, in its discretion, review any Document *in camera* to determine whether good cause exists for Confidential Treatment." Having reviewed the Notice, the Motion, the Complaint, and the New Public Version, and under the court's authority and in exercise of its discretion under Court of Chancery Rule 5.1(b)(4), the court has

---

[13] The Company certified service of the Motion on Challenger on April 16, 2024, via email, and the Opposition referenced this filing date. Dkt. 14; Dkt. 15 at 1. Therefore, the deadline for any opposition under Rule 5.1(f)(2) was April 23, 2024. *See* Ct. Ch. R. 6(a) ("When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and other legal holidays shall be excluded in the computation."). The Opposition was both dated and filed on April 24, 2024. Dkt. 15 at 1.

determined that good cause does not exist for continued confidential treatment of this information.

The Delaware Constitution of 1897 provides that "[a]ll courts shall be open." Del. Const. Art. I, § 9. Delaware law recognizes, however, that there are limited circumstances in which the public interest in access to court proceedings is outweighed by the harm that would result from public disclosure of sensitive, non-public information. *Al Jazeera Am., LLC v. AT & T Servs., Inc.*, 2013 WL 5614284, at *3, *5 (Del. Ch. Oct. 14, 2013). Court of Chancery Rule 5.1 embodies this limited exception. *GKC Strategic Value Master Fund, LP v. Baker Hughes Inc.*, 2019 WL 2592574, at *2 (Del. Ch. June 25, 2019). Rule 5.1(a) provides that "[e]xcept as otherwise provided in this Rule, proceedings in a civil action are a matter of public record."

Anyone seeking to prevent public access to any part of a filing in this court, even as to a single word, bears the burden of demonstrating "good cause." Ct. Ch. R. 5.1(b)(3). This burden is not satisfied through a mere showing that the information is not otherwise publicly available. *Soligenix, Inc. v. Emergent Prod. Dev. Gaithersburg, Inc.*, 289 A.3d 667, 676–77 (Del. Ch. 2023) ("Information is not entitled to confidential treatment merely because it is not publicly available."). Rather, good cause for confidential treatment only exists "if the public interest in

access to Court proceedings is outweighed by the harm that public disclosure of sensitive, non-public information would cause." Ct. Ch. R. 5.1(b)(2). "The public interest is especially strong where the information is material to understanding the nature of the dispute. In those instances, denial of public access to material requires a strong justification." *P'r Invests. L.P. v. Theranos, Inc.*, 2017 WL 2303954, at *2 (Del. Ch. May 25, 2017) (internal quotation marks omitted).

The Company seeks continued confidential treatment of two discrete categories of information: "information about the policy amount and cost of the insurance obtained by the Company's Board of Directors" (the "Policy Amount and Cost Information") and "information about the competitive viability of GRAIL in the market" (the "Competitive Information").[14]

The information for which continued confidential treatment is sought is material to understanding the nature of the dispute. The Company itself describes the Complaint as "alleg[ing] that the Board closed the transaction to reacquire GRAIL despite regulatory scrutiny and that the Board's purchasing of additional Directors and Officers insurance demonstrates that the Board knew the transaction was 'unlawful.'"[15] Even based only on this description, it is apparent that the amount

---

[14] Motion ¶ 9.

[15] *Id.* ¶ 8.

and cost of the additional D&O insurance and "the Board's perception of GRAIL's position in the market compared to other competitor cancer diagnosis companies"[16] are, at least from the Plaintiff's perspective, integral to the Board's decision-making process in approving the transaction. Those facts are not tangential to Plaintiff's fiduciary duty claim.

Additionally, the public has a demonstrated interest in understanding the nature of this dispute, which involves a publicly traded Delaware corporation. This action is one of four related cases in this court concerning the GRAIL transaction,[17] and as the Challenger notes, there has been national media coverage of litigation around the transaction.[18] To shield the information for which continued confidential treatment is sought from the public and the Fourth Estate, the Company must demonstrate a harm it would suffer from disclosure that outweighs the public's interest in access to that information. It has not done so.

First, the Company contends that disclosure of the cost and coverage of the Policy Amount and Cost Information: (1) "would" harm the Company by forcing

---

[16] *Id.* ¶ 16.

[17] Specifically, three plenary actions (this case, *Icahn P'rs LP v. deSouza*, C.A. No. 2024-1045-PAF, and *City of Roseville Gen. Empls. Ret. Sys. v. deSouza*, C.A. No. 2024-0398-PAF [hereinafter "*Roseville*"]) and one books and records proceeding (*Pavers and Rd. Builders Benefit Funds v. Illumina, Inc.*, C.A. No. 2024-0136-PAF [hereinafter "*Pavers*"]).

[18] Dkt. 12 at 5 n.1.

disclosure of "commercially sensitive information . . . of current relevance"; (2) "could" encourage actions against the board "by parties incented to bring claims by the policy amount"; and (3) "may . . . undermine the ability to have confidential settlement discussions if and when the parties and the insurers deem those appropriate."[19]  None of these arguments carries any persuasive weight.

The authorities upon which the Company relies regarding the Policy Amount and Cost Information do not provide support for the confidential treatment of the Policy Amount and Cost Information.  These cases mostly provided for confidential treatment of discrete facts because the disclosure thereof would have caused the movant competitive harm in the marketplace.[20]  That is not a risk here.  In addition,

---

[19] Motion ¶ 10.

[20] *See In re Lordstown Motors Corp. S'holders Litig.*, 2022 WL 601120, at *5–6 (Del. Ch. Feb. 28, 2022) (permitting continued confidential treatment of "the non-public particulars of [customers'] orders" because "the specifics of a potential customer's order could be valuable to a competitor," as well as identities of customers that were not already public and "specific, sensitive details of the advisor's analyses of Legacy LMC's business and its strategic recommendations" but finding that continued confidential treatment of "more general facts—like the identity of the advisor, the type of work it was asked to perform, and the gist of its advice" and "[g]eneral descriptions of possible concerns with pre-orders" was not warranted); *Al Jazeera*, 2013 WL 5614284, at *5 (permitting continued confidential treatment of "sensitive proprietary or business information" such as "the per-subscriber fee" and "the number of subscribers," concluding that "the potential economic harm caused by disclosure outweighs the public's interest in accessing that information, largely because knowledge about price terms does not impinge on the public's understanding of the disputes before this Court"); *In re Oxbow Carbon LLC*, 2016 WL 7323443, at *3–4 (Del. Ch. Dec. 15, 2016) (maintaining confidential treatment of the prices offered by and identities of bidders in a private sales process, recent valuations of a private

the Company does not explain how disclosure of the insurance premium and coverage limit could undermine settlement negotiations in this case or the related actions. Not only does Rule 26(b)(2) permit discovery into insurance coverage, but the Plaintiff in this case—and the plaintiffs in two related actions—already have the insurance information, and it is alleged in one of their complaints.[21]

That is not to say that harm arising from disclosure of a party's insurance coverage cannot support continued confidential treatment. In *Theranos*, this court recognized that "[d]isclosure of this [insurance coverage] information would hinder Theranos's ability to litigate other cases it is involved in." 2017 WL 2303954, at *2.

---

company, and personally sensitive information regarding two defendants' personal lives, but finding that continued confidential treatment was not warranted for legal advice the company received, unitholders' returns on investment, the size of unitholder's holdings, employment information concerning former employees, and the profitability of certain unrelated investments by some of the company's investors, and other information); *Alixpartners, LLP v. Thompson*, 2019 WL 4014819, at *6 (Del. Ch. Aug. 19, 2019) (permitting continued confidential treatment of "a July 2013 report that details AlixPartners' internal analyses and impressions of McKinsey as a competitor" that "includes an aggregation of historical information and data about McKinsey, lists of referral sources key to AlixPartners' business, and planned responses to compete with McKinsey," which AlixPartners contended would allow its "competitors to reverse engineer how top-level management analyzes competitors and formulates strategy" (internal quotation marks omitted)). The Company also cites *Hewlett v. Hewlett-Packard Co.*, 2002 WL 32151538 (Del. Ch. Apr. 16, 2002). But *Hewlett* is not a decision on a Rule 5.1 challenge. Rather, it is merely a confidentiality order entered by the court under the predecessor to Rule 5.1.

[21] *Roseville*, Dkt. 1 ¶¶ 41, 44, 105–06. It is also contained in a brief filed in the related books and records action. *Pavers*, Dkt. 10 at 14–15.

The company in that case was privately held, and its application for continued confidential treatment pointed out that its directors were the subject of other pending class actions in other jurisdictions.[22] The Company does not make a similar argument here. More important, and what distinguishes *Theranos* from this case, is the *Theranos* court's conclusion that the "insurance information d[id] not bear on the plaintiffs' claims for breach of fiduciary duty in [that] case." *Id.*[23] Thus, the court determined that "'a balancing of the public interest against the harm that public disclosure might entail' counsels in favor of maintaining the confidentiality of this information." *Id.* (quoting *Reid v. Siniscalchi*, 2014 WL 6486589, at *1 (Del. Ch. Nov. 20, 2014)).

But that is not the case here. As the Company itself acknowledges, the Plaintiff's theory is "that the Board's purchasing of additional Directors and Officers insurance demonstrates that the Board knew the transaction was 'unlawful.'"[24] The public cannot understand this argument without understanding the nature and magnitude of that insurance and its cost. By contrast, any harm to the Company by

---

[22] *Theranos*, Dkt. 70 ¶ 4.

[23] The Rule 5.1 challenge in *Theranos* was focused solely on exhibits attached to an application for a temporary restraining order, and the insurance information was not reflected in any of the briefing on the motion. *Id.* at Dkts. 4, 65; *cf. id.* at Dkts. 34–35, 40.

[24] Dkt. 14 ¶ 8.

disclosure of that information is slight. Therefore, the insurance information bears upon Plaintiff's claims for breach of fiduciary duty in this case, and "a balancing of the public interest against the harm that public disclosure might entail" requires public disclosure of this information. *Reid*, 2014 WL 6486589, at \*1; *cf. Theranos*, 2017 WL 2303954, at \*2.

The Company next seeks continued confidential treatment of allegations that it characterizes as "describ[ing] the Board's perception of GRAIL's position in the market compared to other competitor cancer diagnosis companies."[25] The Company insists that this court has protected similar information in the past and that the Company's redactions are narrow and do not impede the public's ability to understand Plaintiff's contentions.

The Company's reliance on *Uvaydov v. Fenwick-Smith*, 2023 WL 4614766 (Del. Ch. July 18, 2023), does not justify continued confidential treatment. There, Lightning eMotors, Inc. ("Lightning") sought continued confidential treatment of, among other information, forward-looking projections related to its business and its board's recommendations and analyses regarding "revenue and product projections,

---

[25] *Id.* ¶ 16.

key customer relationships, and organizational planning."[26] *Id.* at *3–4. Lightning submitted a sworn declaration explaining that projections from 2020 were still competitively sensitive because the electric vehicle industry "is characterized by long sale cycles," and explained that "a competitor could use the redacted information to discern Lightning's overall production projections for a given customer or how much previously projected revenue and production remain outstanding." *Id.* at *3 (internal quotation marks omitted). The court determined that most of Lightning's narrow redactions were tailored to protect against the types of harms that it had articulated and, "[g]iven th[e] context" provided by the affidavit, concluded that the information was not stale and posed a harm that outweighed the public's interest in access to this information. *Id.* at *3–4.[27]

Here, the Company neither provides argument as to why this information, now more than three years old, is not stale, nor as to why its disclosure poses a competitive threat to the Company. The Company asserts that this "Competitive Information describes the Board's perception of GRAIL's position in the market

---

[26] It also sought confidential treatment of the identities of its customers and the substance of actual and projected orders. *Uyadov*, 2023 WL 4614766, at *3–4.

[27] Nevertheless, the court determined that "[s]everal redactions go too far and must be lifted" and directed Lightning to prepare a new redacted version of the complaint consistent with the court's ruling. *Id.* at *4–5.

compared to other competitor cancer diagnosis companies" and argues that its disclosure would harm the Company in the same manner in which Lightning would have been harmed by disclosure of its board's analysis of its competitive position.[28] But the Company's analysis of *GRAIL's* competitive position is not relevant to *the Company*'s ability to compete—rather, the Company has been ordered to divest GRAIL, and has announced its intention to do so.[29] Furthermore, the two sentences that the Company seeks to keep under wraps reflect more of "the gist of [] advice" than "specific, sensitive details of [] analyses." *Lordstown*, 2022 WL 601120, at *5; *accord Uvaydov*, 2023 WL 4614766, at *4 (permitting redaction of "material concern[ing] strategic discussions about revenue and product projections, key customer relationships, and organizational planning" but finding that redactions of "vague generalities discussed by the Board" were unnecessary and "do little to protect Lightning's legitimate interests in maintaining the confidentiality of its sensitive business information"). The Company has not demonstrated a harm it

---

[28] Dkt. 14 ¶ 16.

[29] Compl. ¶¶ 127–28, 131; Illumina, Inc., Quarterly Report (Form 10-Q) (May 3, 2024) at 24. "The court may take judicial notice of facts publicly available in filings with the SEC." *Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1167 n.3 (Del. Ch. 2002) (citing *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69–70 (Del. 1995)).

would face with respect to the Competitive Information that outweighs the public's interests.

For the foregoing reasons, the Company has not established good cause for confidential treatment of the remaining redactions in the New Public Version, and the Complaint must be made available for public inspection in its entirety.

Very truly yours,

*/s/ Paul A. Fioravanti, Jr.*

Vice Chancellor

PAF/dtw