**In re TRIARC COMPANIES, INC.**

**Class and Derivative Litigation.**

**Consolidated C.A. No. 15746.**

Court of Chancery of Delaware, New Castle County.

Submitted: Dec. 15, 2000.
Decided: Jan. 12, 2001.

Joseph A. Rosenthal, Rosenthal, Monnhait, Gross & Goddess, Wilmington, Delaware, Jill S. Abrams, Abbey, Gardy & Squitieri, New York, New York, Robert M. Kornreich, Robert C. Finkel, Wolf Popper LLP, New York, New York, for Plaintiffs.

Richard I.G. Jones, Jr., Ashby & Geddes, Wilmington, Delaware, Gerald Harper, Jonathan H. Hurwitz, New York, New York, for Defendants Peltz and May.

Martin P. Tully, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for Defendants Carey, Chajet, Jaffe, Levato, Schwab, Troubh and Tsai, and Nominal Defendant Triarc Companies, Inc.

Grover C. Brown, Gordon Fournaris & Mammarella, Wilmington, Delaware, for Morris and Morris, Chimicles & Tikellis, and Wolf Haldenstein Adler Freeman & Herz.

T.S.L. Perlman, Attorney at Law, Washington, D.C., pro se.

## *OPINION*

LAMB, Vice Chancellor.

### I.

In 1994, Triarc Companies, Inc. sought and obtained, by means of a written proxy statement, stockholder approval of a compensation agreement ("Plan") between the corporation and its two most senior executives, Nelson Peltz and Peter May. The proxy statement disclosed that the compensation to be paid to Peltz and May under that agreement would be "in lieu of base salary, annual performance bonuses and long term compensation for a six-year period beginning April, 1993."

Three years later, plaintiffs filed a series of class and derivative complaints, here and in another court, alleging that Triarc's directors breached their fiduciary duties and the terms of the Plan by awarding Peltz and May additional cash bonuses and stock options after the Plan was approved by stockholders. These complaints sought equitable relief in the form of rescission of the option awards and disgorgement to the corporation of the cash bonuses. The relief sought in the complaints was limited, in general, to remedies that benefited the corporation directly and its stockholders only indirectly, by virtue of their ownership interests.

The parties to the litigations reached a settlement that was presented to the court on November 20, 2000, on notice to all potentially interested parties. At the hearing, I stated on the record that I was satisfied that the economic terms of the settlement, which provide for a substantial

recovery on behalf of the corporation, are fair and reasonable and should be approved.[1] Similarly, I stated and explained my conclusion that the amount of fees sought by plaintiffs as a group was fair and reasonable and should be also approved. Nevertheless, I did not then enter the final order and judgment but took the matter under advisement in order to consider and resolve an objection lodged by T.S.L. Perlman, an attorney at law appearing *pro se*.[2]

▮ Perlman's objection is based on the observation that (i) all of the relief provided by terms of the proposed settlement inures directly to the benefit of the corporation and only indirectly to the stockholder class, and (ii) the language of release found in the proposed final order and judgment would bar the claims of persons, like him, who were stockholders of Triarc at the time of the stockholder vote approving the Plan but who have since sold their shares. Perlman argues that it is unfair to bar and release whatever claims he and other former stockholders may have when they are to receive no benefit from the settlement.

I conclude from my review of the nature of the claims asserted on behalf of the class, that it is fair and reasonable to bar those claims in return for the consideration contemplated by the settlement. In my opinion, those claims would not have supported an award of money damages to individual class members but, rather, only equitable or injunctive relief. The derivative claim, by contrast, could have been found to justify both money damages and

---

1. The settlement consideration consists of a $5 million note given by Peltz and May and payable to Triarc, the cancellation of 775,000 Triarc stock options awarded to Peltz and May, and the additional agreement of defendants' insurer to pay an award of counsel's fees up to $2.5 million. This recovery appears to represent a substantial portion of the

relief that might have been achieved through a trial of this matter.

2. There is also an unrelated dispute among two groups of plaintiffs' counsel over the proper division of the fee. That matter has now been referred to a Special Master for initial consideration and decision.

equitable relief. The proposed settlement contemplates both the payment of money to the corporation and the surrender of 775,000 options previously awarded to Peltz and May. This combination of monetary and equitable relief is a reasonable and adequate basis on which to release both the derivative and class claims.

The fact that certain members of the class, such as Perlman, have sold their Triarc stock, and thus will not benefit, even indirectly, from the proposed settlement, does not change this result. Those persons chose to dissociate their economic interests from the corporation and, by doing so, to forego the opportunity to benefit from either the equitable relief aspects of the class claims or the potential benefit to the corporation from the derivative claims. Where, as here, the class claims do not support an award of monetary damages, a settlement of those claims that does not include the payment of money to individual class members (including those who are no longer stockholders) may be, nonetheless, both fair and reasonable.

## II.

The consolidated and amended complaint filed in this action in December 1997, alleges a combination of class and derivative claims arising out of the adoption and implementation of the Plan. The derivative claims rest on the premise that any decision to pay compensation to Peltz and May beyond the amounts authorized by the Plan was made in breach of the directors' fiduciary duties to the corporation.

The class claims are based on statements made in the 1994 proxy statement by which stockholder approval of the Plan was obtained. These claims, in substantial part, are for breach of the directors' duty of disclosure and include the following:

- The proxy statement misled stockholders into believing that Peltz and May would not receive further compensation for six years and failed to disclose that the board of directors "covertly reserved the right" to award Peltz and May additional compensation beyond that authorized by the Plan; and

- The proxy statement affirmatively misrepresented the value of the performance options to be issued under the Plan as $32 million, rather than $42 million.

The complaint also alleges, as a class claim, that the disclosure in the proxy statement to the effect that Peltz and May would not receive any further base salary, annual performance bonus or long-term compensation for six years beginning April 1993, resulted in a contract or a promissory estoppel running to the benefit of the stockholders individually and as a group. Paragraph 45 of the consolidated complaint alleges:

> The members of the 1994 Board also violated their obligations of good faith and fair dealing inherent in the promises made to Triarc's public shareholders in the 1994 Proxy Statement with respect to the conditions and limitations attached to the compensation of defendants Peltz and May. Such promises were made directly to Triarc's public shareholders to induce them to approve the amendments to the Plan, which approval was a precondition to the grant of the Performance Options.

Perlman's objection is grounded on the argument that the class claims asserted in the complaint could support a monetary recovery directly by the stockholders. As he says, "[i]t is settled that misrepresentations or nondisclosures in proxy statements soliciting votes give rise to direct actions for damages by stockholders who suffer economic injury."[3] He goes on to

---

**3.** For this proposition, Perlman cites *Malone* v. *Brincat*, Del.Supr., 722 A.2d 5 (1998); *Lou-*

argue that: "elementary principles of contract law indicate that claims for breach of promise are personal to the promisee or, in the case of a contract for the benefit of a third party, the third party beneficiaries." From this, he implies, he had a right to recover money damages on the so-called breach of contract or promissory estoppel claims.

### III.

■ I start with the proposition that Delaware law favors the voluntary settlement of corporate disputes.[4] Moreover, when passing on a proposed class action settlement, I must evaluate "whether [it] is fair and reasonable in the light of all relevant factors."[5] As already mentioned, the terms of the proposed settlement contemplate a substantial recovery by Triarc that approximates what might have been obtained on its behalf had the matter been litigated to a conclusion.[6] Thus, there is no question that the proposed settlement is fair and reasonable to Triarc. Counsel for the parties also argue that the settlement is fair to the class because, they say, the class had no viable claims for substantial monetary damages, as opposed to equitable relief. Thus, they argue, the terms of the settlement, including the repayment of cash to Triarc and the surrender of options, adequately account for any viable claims belonging to the class.

In passing on Perlman's objection, I direct my attention to "the probable validity of the claims" made by the plaintiffs on behalf of the class and the likelihood that those claims might have led to a monetary recovery on behalf of Perlman or those similarly situated to him.[7] If it appears that those claims are weak or of little or no probable value or would not likely result in any recovery of damages by individual stockholders, it is fair to bar those claims as part of the overall settlement. Indeed, it is unreasonable to think that the defendants should be willing to pay substantial consideration in settlement without receiving in exchange a release that is at least as broad as the claims that were actually asserted against them in the litigation, even claims that are of only speculative value.[8] If, by contrast, the class had a viable claim for substantial monetary relief, Perlman's objection to the failure of the settlement to allocate any consideration to the class claims would be more troubling.

The alleged class claims were of two kinds: those alleging a violation of the directors' duty of disclosure that arose at the time of the 1994 proxy solicitation, and those arising thereafter when the allegedly improper compensation awards were made predicated on a theory of breach of contract or promissory estoppel. These claims fail for different reasons.

### A.

■ First, the duty of disclosure claims would very likely not have supported a recovery of money damages. Perlman relies on *In re Tri–Star Pictures, Inc. Litig.*[9] for the proposition that individual

*don v. Archer–Daniels–Midland Co.*, Del.Supr., 700 A.2d 135 (1997); and *In re Tri–Star Pictures, Inc., Litig.*, Del.Supr., 634 A.2d 319 (1993).

4. *Kahn v. Sullivan*, Del.Supr., 594 A.2d 48, 58 (1991).

5. *In re Caremark International Inc. Derivative Litig.*, Del.Ch., 698 A.2d 959, 966 (1996).

6. *See supra* n. 1.

7. *Polk v. Good*, Del.Supr., 507 A.2d 531, 536 (1986).

8. *In re Resorts Int'l S'holders Litig.*, Del.Ch., C.A. Nos. 9470 and 8605, Hartnett, V.C., 1988 WL 92749 (Sept. 7, 1988), mem op. at 31–32.

9. Del.Supr., 634 A.2d 319.

class members might have recovered damages. But *Tri–Star* was narrowly limited to its facts in *Loudon v. Archer–Daniels–Midland Co.*[10] and can no longer be thought to support an award of damages (even nominal damages) in a case such as this. In *Loudon,* the Supreme Court said, as follows: *"Tri–Star* stands only for the narrow proposition that, where directors have breached their disclosure duties in a corporate transaction that has in turn caused impairment to the economic or voting rights of the stockholders, there must at least be an award of nominal damages."[11] At the same time, however, *Loudon* recognized a much broader category of cases in which a violation of the duty of disclosure will ordinarily support only a claim for equitable or injunctive relief. The court stated that it was "difficult to see how damages may also be available in such a case."[12]

■ Here, the duty of disclosure claims alleged in the complaint attacked the validity of the stockholder vote approving the Plan. The Plan did not impair stockholders' economic or voting rights as did the disputed transaction in *Tri–Star.*[13] Thus, even if the present disclosure claims succeeded, the appropriate remedy would likely have been equitable, limited to an order either requiring a resolicitation and revote or rescinding the Plan. Based on *Loudon,* I conclude that the duty of disclosure claims would not have supported a class claim for money damages,[14] even nominal money damages.[15]

Moreover, the record before me supports the conclusion that the specific disclosure claims had little merit. Plaintiffs adequately explored these claims and, for sufficient reasons explained in the record, concluded that they were unlikely to succeed at trial. Perlman does not question this judgment or otherwise argue about the likely merit of these claims.

**B.**

■ Second, to the extent that the complaint alleges (and Perlman argues for) the existence of individual claims based on the-

10. Del.Supr., 700 A.2d 135, 142.

11. *Id.*

12. *Id.* at 141.

13. *Tri–Star* involved an attack on the entire fairness of a complex of transactions by which Tri–Star exchanged new common shares *equal to 220 percent of its outstanding stock* for a group of allegedly overvalued assets belonging to its largest stockholder, thereby increasing that stockholder's percentage ownership to more than 80 percent of the equity. As a result of the transaction, the Delaware Supreme Court read the complaint to allege a substantial impairment of both the voting and economic rights of the public stockholders. 634 A.2d at 330–32.

14. In expressing this view, I note that the plaintiffs represented at the November 20, 2000 hearing that they had failed to substantiate the claim that the defendant directors deliberately misinformed the Triarc stockholders or purposefully misrepresented their intention with regard to Peltz's and May's future compensation. Perlman does not contend otherwise. Thus, this case is to be distinguished from *Malone,* Del.Supr., 722 A.2d at 14 (knowing dissemination of materially false information in regular public filings and reports may result in finding of breach of fiduciary duty by corporate directors).

15. I also note my view that the failure of the proposed settlement to make allowance for the possibility of an award of *nominal* damages to putative class members does not support an objection to the fairness and reasonableness of its terms or the scope of the proposed settlement class. Nominal damages are merely symbolic in nature and usually trivial in amount. Charles T. McCormick, *Handbook on the Law of Damages,* § 20, at 85 (1935). Compared to the substantial terms of the proposed settlement, the possible award of nominal damages is plainly an immaterial consideration.

ories of contract or promissory estoppel, I conclude that those claims are properly regarded as derivative in nature. Thus, they would not support an award of money damages to Perlman or persons similarly situated.

■ The distinction between claims belonging to the corporation and those that can be prosecuted directly by stockholders individually is often "a narrow one." [16] Nevertheless, "it may be said that, where the substantive nature of the alleged injury is such that it falls directly on the corporation as a whole and collectively, but only secondarily, upon its stockholders as a function of and in proportion to their pro rata investment in the corporation, the claim is derivative in nature and may be maintained only on behalf of the corporation." [17] In *Moran v. Household Int'l, Inc.*, the Court of Chancery explained as follows:

> To set out an individual action, the plaintiff must allege either "an injury which is separate and distinct from that suffered by other shareholders," ... or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation. [18]

The Delaware Supreme Court later described this formulation as "a useful guide." [19]

Applying that "useful guide" here, it is clear that whatever injury Perlman (or other individual stockholders) suffered as a result of the payment of additional elements of compensation to Peltz and May gave rise to a derivative, not an individual, claim. Perlman concedes as much with respect to the payment of cash bonuses. However, he argues that the issuance of additional options to Peltz and May "directly injured the shareholders, because the potential increase in outstanding shares diluted their ownership interest and transferred part of it to the option holders." This argument fails the *Moran* test, as the injury alleged is not "separate and distinct from that suffered by other shareholders" and does not involve any "contractual right of a shareholder." This result is consonant with the normal understanding that claims relating to executive compensation matters are derivative in nature. [20]

### IV.

The fact that the class claims asserted on behalf of the stockholder class had little or no chance of recovering money damages (even nominal damages) leads me to conclude that it is fair and reasonable to release those claims in the context of a proposed settlement that provides substantial recovery on behalf of the corporation and, indirectly, its stockholders. Moreover, Perlman's decision to sell his shares during the pendency of the litigation and, thus, forego the possibility of benefiting from the equitable and derivative-type relief sought by the litigation, provides no reason to exclude him from the class for purposes of the settlement. Indeed, it is commonplace for class certification orders

16. *Kramer v. Western Pacific Indus., Inc.*, Del. Supr., 546 A.2d 348, 351–52 (1988).

17. Donald J. Wolfe and Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, § 9–2, at 516 (1998) [hereinafter Wolfe & Pittenger].

18. Del.Ch., 490 A.2d 1059, 1070 (1985)(quoting 12b William Meade Fletcher et al., *Fletch-*

er Cyclopedia of the Law of Private Corporations, § 5921, at 452 (perm.ed., rev.vol.1984) (citation and footnote omitted)), *aff'd*, Del. Supr., 500 A.2d 1346 (1985).

19. *Lipton v. News Int'l, PLC*, Del.Supr., 514 A.2d 1075, 1078 (1986).

20. Wolfe & Pittenger, § 9–2(a) at 518.

entered by this Court in actions involving the internal affairs of Delaware corporations to define the relevant class as all persons (other than the defendants) who owned shares as of a given date, and their transferees, successors and assigns. Where the claim is of such a nature that the only available relief is either equitable or directed to the benefit of the corporation, it is unavoidable that persons who sever their economic relationship with the corporation during the litigation will not benefit from a settlement or a judgment in favor of the class. Those persons are viewed as having sold their interest in the claim with their shares, and there is nothing unfair or unreasonable about a judgment that bars their later assertion of an insubstantial claim for money damages alleged to arise out of the same act or transaction.[21]

Perlman cites *Shingala v. Becor Western Inc.*[22] to support his argument for exclusion. While the court in that case did exclude a limited number of former shareholders from the definition of a settlement class, the court's reasoning does not support the same result here. In *Becor Western,* the objector sought to exclude from the settlement class all former stockholders who, because they had sold their shares into the market, would not participate in the revised merger terms included in the settlement. The court overruled the objection except to the extent that such former stockholders could be thought to have a viable claim for money damages based on their earlier sale. The court included in the definition of the approved settlement class all of those former stockholders who, it appeared from the record, had no substantial claim for money damages. As the court said: "Since it now appears that those selling stockholders who are members of the class have not suffered any damages, I find that their interests are not antagonistic to those of the named plaintiffs."[23] Because I have similarly concluded that Perlman (and other selling stockholders) had no viable claim for money damages, I read *Becor Western* as supporting my decision to reject his objection to the proposed settlement.

* * * *

Before concluding, I offer the observation that the admixture of derivative and class claims presented here is potentially inherent in any transaction that (a) involves an outflow of corporate assets (in this case stock, as part of an executive compensation plan) and that (b) is approved by shareholders. As a theoretical matter, any such transaction will always be subject (at least potentially) to attack on the (derivative) ground that the underlying transaction was economically unfair to the corporation and on the (individual or class) ground that the shareholder approval of the transaction was improperly obtained. The question will be: under what conditions must a settlement of both claims result in separate consideration flowing to the corporation and to the class.

In drafting a settlement involving a transaction of this kind, counsel must be mindful of these two separate categories of claims. If counsel conclude that the derivative claims have value, settlement consideration will flow to the corporation. But even if counsel properly conclude that the disclosure claims have merit, it does not follow that a portion of the settlement proceeds must flow directly to the shareholder class, unless counsel also conclude

---

21. *Resorts,* mem. op. at 29–32.

22. Del.Ch., C.A. Nos. 8858 and 8859, Berger, V.C., 1988 WL 7390 (Feb. 3, 1988).

23. *Id.* at 14.

that the disclosure claims fall outside of that broad category of cases recognized by *Loudon* as supporting only a claim for equitable or injunctive relief. In this case the disclosure claims would not support a monetary recovery, and hence were properly disregarded in determining both the amount and the proper recipients of the settlement consideration.

## V.

For all of these reasons, the objection asserted by T.S.L. Perlman is overruled. Thus, and for the additional reasons found in the record of the November 20, 2000 hearing in this matter, the proposed settlement will be approved and an order and final judgment will be entered. Counsel for the parties are instructed to confer upon an appropriate form of order and to submit such an order to the court no later than January 19, 2001, on notice to Perlman.