# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00248-CV

**Brigham Exploration Company, Ben M. Brigham, David T. Brigham, Harold D. Carter, Stephen P. Reynolds, Stephen C. Hurley, Hobart A. Smith, Scott W. Tinker, Statoil ASA and Fargo Acquisition, Inc., Appellants**

**v.**

**Raymond Boytim, Hugh Duncan, Robert Fioravanta, Walter Schwimmer, Michael Ohler, Ryan Ohler, Walter Ohler, Jr., The Edward J. Goodman Life Income Trust and The Edward J. Goodman Generation Skipping Trust, Jeffrey Whalen, and Howard Weisberg, Individually and on Behalf of Others Similarly Situated, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. D-1-GN-11-003205, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After this Court reversed a prior order by the trial court granting class certification and remanded the case to the trial court for further proceedings, *see Brigham Exploration Co. v. Boytim*, No. 03-13-00191-CV, 2014 Tex. App. LEXIS 9068, at \*11 (Tex. App.—Austin Aug. 15, 2014, no pet.) (mem. op.), the trial court entered a subsequent order granting class certification. Appellants Brigham Exploration Company, Ben M. Brigham, David T. Brigham, Harold D. Carter, Stephen C. Hurley, Stephen P. Reynolds, Hobart A. Smith, Scott W. Tinker, Statoil ASA and Fargo Acquisition, Inc., bring this interlocutory appeal challenging the subsequent order granting class certification. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(3). For the reasons

that follow, we again must decertify the class, reverse, and remand this cause for further proceedings consistent with this opinion.

## BACKGROUND

Appellant Brigham Exploration Company (Brigham) was a publically traded company. Appellant Statoil ASA (Statoil) made a tender offer for all shares of stock in Brigham at $36.50 per share, and Brigham's Board of Directors approved the transaction on October 16, 2011. Brigham announced the transaction on October 17, 2011, and Statoil commenced the tender offer on October 28, 2011. After shareholders had voluntarily tendered over 92% of the outstanding shares in December 2011, Statoil effected a short-form merger, converting each remaining share of stock into a right to receive $36.50.

Appellees brought suit on October 17, 2011, seeking to enjoin the transaction based, in part, on the Brigham board members' alleged breaches of their fiduciary duties, including the duty to disclose material information to the shareholders. After a hearing on November 22, 2011, the trial court denied appellees' request for a temporary injunction. Appellees proceeded with their suit, seeking class certification and damages based on their claims that individual Board members breached their fiduciary duties and that Brigham and Statoil aided and abetted the Board members' breaches of their fiduciary duties. Appellants denied the allegations and asserted affirmative defenses including acquiescence and waiver.

Appellees filed a proposed order granting class certification and a proposed amended preliminary plan for the trial of the class claims. After holding an evidentiary hearing on appellees' motion for class certification in October 2012 and a subsequent hearing in February 2013, the trial

2

court granted appellees' motion for class certification. *See Boytim*, 2014 Tex. App. LEXIS 9068, at *4. Appellants brought an interlocutory appeal from the order, and this Court decertified the class, reversed, and remanded the case for further proceedings. *Id.* at *11. We concluded that the class certification was improper because the trial court's order and trial plan failed to comply with the express requirements of Texas Rule of Civil Procedure 42 and did not meaningfully address and analyze appellants' pleaded defenses. *See id.* *9–10. We expressly did not reach appellants' additional challenges based on other class certification prerequisites. *See id.* at *11 n.2.[1]

After the case was remanded to the trial court, appellees submitted a proposed second amended plan for the trial of the class claims. Appellants continued to oppose class certification, and Brigham and the individual appellants filed a third amended answer. Their defenses include that:

- Any alleged misrepresentations and omissions in the Schedule 14D-9 and the tender offer statement on Schedule TO were not material to any individual shareholder and did not proximately cause or contribute to any damages, losses, or injuries sustained by Plaintiffs. Alternatively, the plaintiffs and purported class members sold or decided to sell such shares in the open market or in the tender, knowing that such claims were made.

- One or more of the named plaintiffs or purported class members' claims were "barred, in whole or in part, by the doctrines of waiver, acquiescence, acquiescence in price, ratification, and estoppel."

---

[1] We disagree with appellees' characterization of our opinion in *Boytim* that we "identified a single issue for further consideration on class certification: whether the trial plan 'state[d] the elements of [Appellants' pleaded] defenses' and conducted a rigorous analysis of those defenses." Because we found the trial plan deficient, we expressly did not reach appellants' other issues challenging the class certification of appellees' claims. *See Brigham Exploration Co. v. Boytim*, No. 03-13-00191-CV, 2014 Tex. App. LEXIS 9068, at *11 n.2 (Tex. App.—Austin Aug. 15, 2014, no pet.) (mem. op.).

- And any recovery by appellees should be reduced under the doctrine of proportionate responsibility.

At the hearings on class certification, no party offered testimony, but an exhibit was admitted without objection that summarized and detailed the number of Brigham shares traded and tendered during the relevant time periods. According to the exhibit, out of the "117 Million Shares Outstanding," (i) 62,364,273 shares were traded in the open market on October 17, 2011, the date of the merger announcement; (ii) 133,562,203 shares were traded in the open market from October 17 through October 27, 2011 (SEC filing date); (iii) 116,484,804 shares were traded in the open market from October 28, 2011 through November 30, 2011 (close of tender date); and (iv) 5,319,429 shares were traded in the open market between December 1 and 8, 2011 (secondary tender offer period). As to the tendered shares, the exhibit reflects that 103,942,665 shares were tendered between October 27 and November 30, 2011, and 5,454,603 shares were tendered between December 1 and 8, 2011. In sum, 255,366,456 shares were traded in the open market from the date of the merger announcement to the close of tender, and 109,397,268 shares were tendered. Appellees do not dispute the exhibit's accuracy.

Following the hearing, the trial court signed an order granting class certification. Mirroring the class definition in the prior order, the trial court certified a class "defined as all holders of common stock of Brigham Exploration Company as of Oct. 17, 2011," excluding from the class defendants and other persons and entities related to or affiliated with defendants. The trial court also adopted and incorporated appellees' proposed second amended plan for the trial of the class claims. Appellees' second amended plan expanded on the prior trial plan by addressing the elements of

appellants' pleaded defenses, setting out Delaware substantive law that appellees contended applied to the defenses, and describing how appellees planned to prove their claims and damages at trial with common evidence. As stated in the plan, appellees' claims for breach of fiduciary duty are based in part on their contention that "the Individual Defendants disseminated a Schedule 14D-9 and a tender offer statement on Schedule TO, filed with the Securities and Exchange Commission on October 28, 2011, which was false and misleading and failed to disclose all material information to Brigham shareholders in connection with the tender offer from Statoil."

The trial court made findings in its subsequent order certifying the class that also mirrored findings in its prior order, including that "Plaintiffs have submitted [a] trial plan which offers a rigorous analysis and a specific explanation of how the class claims are to proceed to trial." Based on its evaluation of appellees' second amended plan, the court also found that "a trial in this action will be manageable in that it involves the application of the laws of a single state (Delaware), there are no individual issues to be resolved by the fact-finder, and that the sole individual issue (the [number] of shares held by each class member on October 17, 2011) can be resolved through a post-judgment proceeding." This interlocutory appeal followed.

## STANDARD OF REVIEW AND CLASS CERTIFICATION REQUIREMENTS

Appellate courts review a class certification order for abuse of discretion. *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008); *Compaq Comput. Corp. v. Lapray*, 135 S.W.3d 657, 671 (Tex. 2004). "A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles." *Bowden*, 247 S.W.3d at 696 (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992)). We do not indulge every presumption in the

5

trial court's favor, however, "as compliance with class action requirements must be demonstrated rather than presumed." *Id.* (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002)). "Courts must perform a 'rigorous analysis' before ruling on class certification to determine whether all prerequisites to certification have been met." *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000). The Texas Supreme Court has rejected a "certify now and worry later" approach. *Id.* Trial courts must determine the underlying substantive law prior to certification "as courts can hardly evaluate the claims, defenses or applicable law without knowing what the law is." *Lapray*, 135 S.W.3d at 672; *see also State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 556 (Tex. 2004) ("[A] trial plan is required in every certification order to allow reviewing courts to assure that *all* requirements for certification under Rule 42 have been satisfied.").

All class actions must satisfy the four threshold requirements contained within Texas Rule of Civil Procedure 42(a): (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law, or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Tex. R. Civ. P. 42(a); *Bernal*, 22 S.W.3d at 433. In addition to the subsection (a) prerequisites, class actions also must satisfy at least one of the subdivisions of Rule 42(b). *See* Tex. R. Civ. P. 42(b) (subsection (b) directs that only certain kinds of actions can be class actions); *Bernal*, 22 S.W.3d at 433. Here the trial court granted class certification under Rule 42(b)(3). To certify a class under Rule 42(b)(3), "the questions of law or fact common to the members of the class [must] predominate over any questions affecting only

6

individual members, and a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Tex. R. Civ. P. 42(b)(3).

Relevant to this appeal, "in evaluating whether an alleged class satisfies the certification requirements, the trial court must determine whether the putative class is sufficiently defined." *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex. 2000); *see* Tex. R. Civ. P. 42(c)(1)(B) ("An order certifying a class action must define the class . . . ."); *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 453 (Tex. 2000). "A properly defined class is imperative for a suit to proceed as a class action because the class definition facilitates identifying, at the outset, the individuals affected by the litigation, and protects their interests." *Beeson*, 22 S.W.3d at 403; *see Sheldon*, 22 S.W.3d at 453. The definition determines who receives notice and provides an opportunity to opt out of the class for class actions maintained under rule 42(b)(3). *See* Tex. R. Civ. P. 42(b)(2)(B) (describing notice that must be provided for class certified under 42(b)(3) and opportunity to be excluded from class); *Beeson*, 22 S.W.3d at 403. "Failure to define a class precisely creates a substantial risk that putative class members cannot adequately exercise their right to opt out or remain in the suit before they are bound by a class judgment." *Beeson*, 22 S.W.3d at 403; *see Sheldon*, 22 S.W.3d at 453 (noting that "failure to adequately define a proposed class implicates due process rights").

**DISCUSSION**

Brigham and the individual appellants (collectively Brigham appellants) bring four issues challenging the trial court's subsequent order granting class certification, and Statoil ASA and Fargo Acquisitions (collectively Statoil) bring two issues. In their four issues, the Brigham

7

appellants contend that the trial court abused its discretion by: (i) failing to conduct the rigorous analysis of all class certification requirements under rule 42, (ii) adopting a legally deficient trial plan, (iii) concluding that individualized issues do not predominate under rule 42(b)(3), and (iv) concluding that the Named Plaintiffs' claims are typical under 42(a)(3).[2] Statoil contends in its issues that the trial court erred by certifying a class on the aiding-and-abetting claims against Statoil and that the trial court erred in certifying an overly broad class that includes class members who do not have standing. Statoil also adopts the Brigham appellants' issues, and the Brigham appellants adopt Statoil's issue challenging the class definition.

We begin with the Brigham appellants' first issue and Statoil's second issue because they are dispositive. As part of their first issue, the Brigham appellants argue that the class definition—"all holders of common stock of Brigham Exploration Company as of October 17, 2011"—is "unworkable and invalid" because: (1) there was extensive trading on October 17, 2011, the day that the merger was announced; (2) the class asserts claims based on

---

[2] Their arguments include: (i) the revised trial plan fails to meet the requirements of rule 42(b)(3), 42(b)(3)(D), and 42(c)(1)(D)(iii)-(iv), (vi)-(viii); (ii) the revised plan does not analyze how damages will be proven under the "unique facts of this case" because of each shareholders' available options after the announcement to tender, sell in open market, demand appraisal, or wait and cash out if merger; (iii) the revised trial plan "does not rigorously analyze the effect" of the affirmative defenses of acquiescence, acquiescence in price, ratification, estoppel, and waiver; (iv) the revised trial plan fails to account for appellants' right to request jury findings on proportionate responsibility; (v) there is no cause of action in Delaware for breach of the duty of candor; (vi) the revised plan misstates the elements of appellees' breach of fiduciary duty claims; (vii) the revised plan fails to address the impact of appellees' "conflicting damages theories on typicality and predominance"; (viii) individualized issues predominate because appellants' affirmative defenses require individualized proof and damages cannot be proven on a class-wide basis; (ix) the numerosity requirements have not been met; and (x) the Named Plaintiffs failed to establish that they are adequate representatives of absent class members.

disclosures that were not made until October 28, 2011, the date of the challenged SEC filings; (3) the class includes shareholders who voluntarily sold their shares after October 17, 2011; and (4) the class includes shareholders who accepted the benefit of the merger transaction. The Brigham appellants focus on the putative class members' varying actions—selling in the open market, tendering, or holding Brigham shares—after the merger announcement. In its second issue, Statoil also challenges the class definition, arguing that the trial court erred in certifying a class based on a class definition that is so broad that it includes members without standing to assert any breach of fiduciary claim tied to the allegedly unlawful disclosures in the SEC filings because they could not have been injured by those filings as a matter of law.

Appellees cite Delaware cases as support for the trial court's class definition. In the Court of Chancery of Delaware, "it is commonplace for class certification orders entered by [the] Court in actions involving the internal affairs of Delaware corporations to define the relevant class as all persons (other than the defendants) who owned shares as of a given date, and their transferees, successors, and assigns." *In re Triarc Cos.*, 791 A.2d 872, 878–79 (Del. Ch. 2001); *see, e.g.*, *In re Celera Corp. S'holder Litig.*, 59 A.3d 418, 429 (Del. 2012) (stating that Delaware Supreme Court "has approved broad definitions of a proposed class before" and observing "that it is 'commonplace' for the definition to include members who held shares as of a given date"). Classes certified in Delaware, however, are certified under the procedural laws for the Delaware court system, which system is significantly different from the Texas court system. *See generally, e.g.*, *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816 (Del. 2015) (describing procedural background of class action concerning merger transaction, including separate phases of proceeding and separate decisions by

9

Court of Chancery on liability and damages); *Zutrau v. Jansing*, Civil Action No. 7457-VCP, 2014 WL 6901461, at *4 n.31 (Del. Ch. Dec. 8, 2014, mem. op.), *aff'd*, 123 A.3d 938 (Del. 2015) ("[J]ury trials are not available in the Court of Chancery."); *cf. Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 205 (Tex. 2007) (noting "predominance requirement [in rule 42] prevents class certification when complex and diverse individual issues would overwhelm or confuse a jury"); *Bernal*, 22 S.W.3d at 434 ("Ideally, 'a judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for other members of the class to file proof of their claim.'" (citation omitted)).

Although the substantive laws of Delaware apply to the parties' dispute, we still follow Texas procedural rules. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 n.10 (1984) ("Under traditional choice of law principles, the law of the forum State governs on matters of procedure."); *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (explaining, in context of contract with choice-of-law clause selecting application of another state's substantive law, that law of forum state applies to procedural questions). A class action is a "procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment." *Stromboe*, 102 S.W.3d at 693. Thus, we do not find Delaware cases applying Delaware's procedural rules for class certification helpful to our analysis under Texas procedural rule 42 as to whether

appellees satisfied the rule's requirements for class certification.[3] *See* Tex. R. Civ. P. 42; *see also*

*Bernal*, 22 S.W.3d at 435 (rejecting "certify now and worry later" approach).

Appellees do not dispute that they must satisfy rule 42, and they agree that each member within a defined class must have standing. *See In re Deepwater Horizon*, 732 F.3d 326, 341 (5th Cir. 2013) (requiring class to "'be defined in such a way that anyone within it would have standing'" (citation omitted)); *see also DaimlerChrysler Corp. v. Inmam*, 252 S.W.3d 299, 304–07 (Tex. 2008) (discussing requirement of "concrete injury" to establish standing in context of class action); *Sheldon*, 22 S.W.3d at 452 ("[F]ederal decisions and authorities interpreting current federal class action requirements are persuasive in Texas actions.").[4] Appellees also do not dispute the volume of shares traded and tendered during the relevant time periods as presented in the exhibit admitted at the hearing on class certification.

The exhibit reflects that the shareholders who owned shares on October 17, 2011, subsequently traded, tendered, or cashed out their shares at different times, under different circumstances, and for different prices. On the actual day of the announcement, 62,364,273 shares were traded in the open market. As currently defined, the class members include both sellers and buyers of shares on that date without regard to the actual time the announcement was made on that

---

[3] Similarly, we do not find helpful to our analysis the opinion in *Pate v. Elloway*, No. 01-03-00187-CV, 2003 Tex. App. LEXIS 9681, at *11–12 (Tex. App.—Houston [1st Dist.] Nov. 13, 2003, pet. denied) (mem. op.) (considering adequacy of class representative on appeal from order certifying class but not considering or providing analysis about class definition).

[4] Delaware law also requires each member within a defined class to have standing. *Dale v. Town of Elsmere*, No. 99M-01-15-VAB, 2001 Del. Super. LEXIS 161, at *21 n.29 (Del. Super. Ct. Apr. 27, 2001), *aff'd*, 788 A.2d 527 (2001) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf. Each class member must have standing to bring the suit in his own right.").

day.  Thus, the class by definition appears to encompass persons who were no longer shareholders when the merger was announced.  Those former shareholders could not have been injured by appellants' actions at the time of the merger announcement and, thus, do not have standing.[5]  *See In re Deepwater Horizon*, 732 F.3d at 342 n.9 (noting that when class "defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct," "class is defined too broadly to permit certification"); *see*

---

[5] During oral argument, counsel for appellees asserted that, if the class claims are successful, the shareholders who would be compensated would be the ones at "the end," presumably the last record owner of each share of Brigham stock prior to tender or cash out.  Counsel argued that the selling of Brigham stock also sold the right to damages in this lawsuit.  The trial court found in its order, however, that "the sole individual issue" will be "the amount of shares held by each class member on October 17, 2011," which "can be resolved through a post-judgment proceeding."  The trial court's class definition and trial plan, therefore, are inconsistent with appellees' theory of the shareholders who will be subject to a final judgment and entitled to compensation. *See Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 403 (Tex. 2000) (noting that "properly defined class is imperative for a suit to proceed as a class action because the class definition facilitates identifying, at the outset, the individuals affected by the litigation, and protects their interests"); *see also Exxon Mobil Corp. v. Gill*, 299 S.W.3d 124, 129 (Tex. 2009) ("When a class has been certified based on a significant misunderstanding of the law, we have concluded that 'remand to the trial court is appropriate so that it can determine the effect . . . on the requirements for class certification.'" (citation omitted)). Under the proposed class definition, shareholders who purchased their shares after October 17 will not be provided notice or an opportunity to opt out of the class. *See* Tex. R. Civ. P. 42(c)(2)(B) (describing notice that must be provided for class certified under 42(b)(3) and opt out opportunity); *Beeson*, 22 S.W.3d at 403 ("Failure to define a class precisely creates a substantial risk that putative class members cannot adequately exercise their right to opt out of or remain in the suit before they are bound by a class judgment."). In their briefing, appellees also inconsistently argue that their breach of fiduciary duty claims are personal under Delaware law so they do not transfer to subsequent purchasers. *See Schultz v. Ginsburg*, 965 A.2d 661, 667–68 n.12 (Del. 2009) (distinguishing right in security itself from personal rights that do not transfer); *Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1169 (Del. Ch. 2002) (stating general rule under Delaware law that "only persons who were stockholders at the time of an alleged wrongdoing have standing to sue corporate directors for breach of fiduciary duty").

*also Beeson*, 22 S.W.3d at 403 (noting that properly defined class "insures that those actually harmed by the defendant's wrongful conduct will receive the relief ultimately awarded").

The class definition also lumps together shareholders who sold their shares in the open market and those who tendered their shares prior to December 8. *See* Tex. R. Civ. P. 42(d) (allowing class to be divided into subclasses and each subclass to be treated as class). A total of 255,366,436 shares—more than double the number of outstanding shares—were traded from the time of the merger announcement to the close of the tender period at varying prices. And the class includes an unquantified number of members who lack standing to assert the claims tied to the SEC filings because they sold their shares prior to the filings and, therefore, could not have been injured by the allegedly false and misleading information in those filings. *See In re Deepwater Horizon*, 732 F.3d at 341 (requiring class to be defined so that members have standing); *Inman*, 252 S.W.3d at 304–07 (requiring "concrete injury" to establish standing).

Appellees cite Delaware cases to support their contention that all of the class members—the holders of shares on October 17—have standing to assert the breach of fiduciary duty claims that are based on disclosures in the SEC filings. The cases appellees cite, however, do not support this contention. *See, e.g.*, *In re Celera Corp.*, 59 A.3d at 429–31 (noting that memorandum of understanding required company "to provide supplemental disclosures relating to financial status" in context of class action settlement but requiring class representative to establish standing by demonstrating injury in fact, causal connection between injury and complained-of conduct, and redressability and concluding that class representative had standing to represent settlement class even though representative sold shares "four days before the merger was consummated" because

13

representative still owned shares at time of wrongful conduct); *In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 355–56 (Del. Ch. 2008) (discussing duty of disclosure in context of plaintiffs who filed appraisal actions and, after discovery in the appraisal actions, then filed fiduciary duty action); *In re Prodigy Commc'ns Corp. S'holders Litig.* No. 19113, 2002 Del. Ch. LEXIS 95, at *17–19 (Del. Ch. July 26, 2002, mem. op.) (approving settlement of claims and noting in discussion of attorney's fee award that "remedial disclosures and other therapeutic benefits [were] directly related to the efforts of the plaintiffs' counsel").

For example, the plaintiffs in *Transkaryotic Therapies* filed appraisal actions before filing their fiduciary duty action. 954 A.2d at 355–56. An appraisal action under Delaware law generally allows a shareholder who holds his shares through the effective date of a merger to be compensated after the transaction is completed based on the Court of Chancery's appraised value of the shares. *See* 8 Del. Code § 262(a) (entitling any "stockholder of a corporation of this State . . . who continuously holds such shares through the effective date of the merger of consolidation," among other requirements, "to an appraisal by the Court of Chancery of the fair value of the stockholder's shares of stock"). By definition then, the shareholders in that case held their shares at the time of any alleged breach of a duty to disclose. The Court in the opinion also discusses the elements of standing under Delaware law and reflects that it may be that "no one has standing to bring disclosure claims after the consummation of a merger." *In re Transkaryotic Therapies*, 954 A.2d at 362 n.55 (questioning shareholders' standing to bring disclosure claims that were based on "infringement of [shareholders'] right to cast informed votes on the merger" after merger completed because merger could not be undone and, thus, claims could not be properly redressed

and noting that there was no evidence of causation to prove illegal consummation of merger—that "the vote would have been different but for the allegedly bad disclosure"); *see also Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1169 (Del. Ch. 2002) (stating that "as a general rule, only persons who were stockholders at the time of an alleged wrongdoing have standing to sue corporate directors for breach of fiduciary duty" and that "under established Delaware law, a breach of fiduciary duty claim must be based on an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the alleged breach").

Based on the undisputed factual circumstances of this case, we conclude that the trial court's class is not sufficiently defined and that it includes members who lack standing. *See Sheldon*, 22 S.W.3d at 453; *Beeson*, 22 S.W.3d at 403. Without a sufficiently defined class to bring their claims, appellees cannot meet rule 42's prerequisites. *See Beeson*, 22 S.W.3d at 403, 408 (noting that "threshold inquiry in determining class certification must be into the parameters of the proposed class" and concluding that plaintiffs could not meet prerequisites of rule 42 because they did not have sufficiently defined class). Therefore, we sustain the Brigham appellants' first issue to the extent it challenges the trial court's defined class and Statoil's second issue. Further, we expressly do not reach appellants' additional issues concerning the requirements of rule 42. *See id*. at 408 (expressly not reaching parties' arguments concerning requirements of rule 42 because "[o]nly with a properly defined class can the explicit class-certification provisions be examined appropriately"). If, on remand, the trial court finds a suitable class definition, it must also ensure that the newly defined class complies with the requirements of rule 42. *Id.*; *see also* Tex. R. Civ. P. 42.

**CONCLUSION**

For these reasons, we decertify the class that the trial court certified, reverse the trial court's order, and remand the cause for further proceedings consistent with this opinion.

_____
Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Reversed and Remanded

Filed:   June 15, 2016